IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VAUGHN G., et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL ACTION NO. MJG-84-1911 |
| | | Exempted from ECF |
| MAYOR and CITY COUNCIL of BALTIMORE, et al., | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \*

## STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF CITY DEFENDANT'S MOTION TO MODIFY THE ORDER OF JULY 11, 2003 REGARDING IMPLEMENTATION OF THE SPECIAL EDUCATION INFORMATION SYSTEM

The State Defendant, Dr. Nancy S. Grasmick, by her undersigned counsel, submits the following Memorandum in Support of Defendant Baltimore City Public School System's (BCPSS) Motion to Modify the July 11, 2003 Order Regarding Implementation of the Special Education Information System (SEIS). State Defendant supports BCPSS motion for the following reasons:

1. BCPSS's extreme financial problems and require immediate corrective action.

2. BCPSS's proposed modification is suitably tailored to the changed circumstances of reduced ITD personnel.

3. Modification of the July 11, 2003 Order does not create a constitutional violation or denial of procedural or substantive requirements under the IDEA.

**A.** **Equitable Considerations Warrant Modification of the July 11, 2003 SEIS Order**

Under Rule 60(b)(5) of the Federal Rules of Civil Procedure, a district court may modify

1

a judgment if it is no longer equitable that the judgment should have prospective application. *Thompson v. U.S. Dept. of Housing and Urban Development*, 220 F.3d 241, 246 (4th Cir 2000). The experience of federal courts in implementing and modifying consent decrees demonstrates that a flexible approach is often essential to achieving the goals of reform litigation, particularly the public's interest in the sound and efficient operations of its institutions. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380-381, 112 S.Ct. 748, 758-759 (1992). A party seeking modification of an institutional reform consent decree bears the burden of establishing that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstances. *Id.* 502 U.S. at 383, 112 S.Ct. at 760. Modification may be warranted when changed factual conditions make compliance with the decree substantially more onerous. Where a party relies upon events that actually were anticipated at the time it entered into a decree, modification should be granted only if the party satisfies the heavy burden of convincing the court that it agreed to the decree in good faith, made a reasonable effort to comply, and should be relieved of the undertaking under Rule 60(b). *Id.* at 385, 112 S.Ct. at 761. A modification must not perpetuate or create a constitutional violation. *Id.* at 391, 112 S.Ct. at 763-764.

## B.   State Defendant Supports BCPSS's Motion to Modify the July 11, 2003 SEIS Order

### 1.   BCPSS's extreme financial problems were unanticipated and required immediate response.

In January 2003, the BCPSS had a projected $31 million budget deficit.[1] This reflected

---

[1] Greater Baltimore Committee, *Review Team of the Baltimore City Public School System's Fiscal Management Practices and Budget Process*, (July 3, 2003), *available at* www.gbc.org/reports/BCPSS.

2

an accumulated deficit over a period of years. In August of 2003, when BCPSS unveiled a fiscal management plan to reduce the deficit, the budget deficit had grown to $41 million.[2] By November 2003, BCPSS's budget deficit had grown to $53 million and continued to increase. On November 19, 2003, the State Board of Education met in special session to be briefed on BCPSS's financial crisis by Dr. Bonnie Copeland, CEO Baltimore City Public Schools, Dr. Patricia Welch, President Baltimore City Board of School Commissioners, and former State Senator Robert Neall. (Minutes of the Maryland State Board of Education, Nov. 19, 2003, Attached at 1). The deficit was increasing to where it was threatening to interfere with BCPSS's ability to meet its payroll and drive it into bankruptcy unless immediate action was taken.

In late November, BCPSS took action of reducing its personnel by more than 700 positions to achieve immediate results of reducing the deficit and to regain control of its finances. Included within the personnel reduction was a 40% reduction of Information Technology Department (ITD) personnel, including loss of staff from the Help Desk, Applications Support Group, Field Technical Support staff, SEIS training group, and managers. *BCPSS Motion* at p 4. The reductions will be effective in January 2004.

The system-wide position reductions mainly affected BCPSS headquarters staff and temporary employees. Uncertified teachers were reduced as were some surplus school administration. The reduction focused on headquarters staff and is intended to have minimum impact on direct delivery of educational services to students. Certified classroom teachers and

---

[2] Greater Baltimore Committee, *City Schools Unveil Three-Pronged Fiscal Management Plan*, (August 27, 2003), *available at* www.gbc.org/news.html and Baltimore City Public School System, *BCPSS Action Plan in Response to the GBC and the PRT Review of the BCPSS's Fiscal Management Practices and Budget Process*, (September 4, 2003), *available at* www.bcps.k12.md.us/pdf/GBC_recommendations_responses.pdf.

3

related services providers were largely excluded from the personnel reduction. BCPSS's ITD personnel reduction was unanticipated when the July 11, 2003 Order was contemplated. At that time, personnel cuts of the recent magnitude were unexpected. Now, because of the magnitude of the financial crisis, the personnel reduction is a responsible step to regaining control of BCPSS finances.

### 2. BCPSS's proposed modification is suitably tailored to the changed circumstances of the reduced ITD personnel.

When the BCPSS implemented its Fiscal Management Plan in August it was not anticipated that more than 700 personnel position would be reduced or that 40% of the ITD staff would be eliminated. Prior to the recent personnel reductions BCPSS implemented the SEIS Order. The Supreme Court in *Rufo* recognized that financial constraints that make compliance with the term of the consent decree substantially more onerous is a legitimate reason in the public interest to modify a consent decree. The Supreme Court stated, "Financial constraints may not be used to justify the creation or perpetuation of constitutional violations but they are a legitimate concern of government defendants in institutional reform litigation and therefore are appropriately considered in tailoring a consent decree modification."*Rufo*, 502 U.S. at 392, 112 S.Ct. at 764-765. The personnel reduction across the headquarters was necessary to give the school system an opportunity to "right its boat" financially, restructure its activities, and permit it to emerge as a healthier and improved school system. The local government administrators of BCPSS have the primary responsibility for solving the budget crisis. The positions reduced by BCPSS administrators demonstrate that BCPSS took care not to eliminate positions directly related to the provision of special educational related services to students. However, with the

4

40% reduction of the ITD staff included in the headquarters-wide personnel reduction to remedy the financial trouble the proposed SEIS Order modification is suitably tailored to allow BCPSS to operate with the remaining personnel.

BCPSS proposed the following modifications to the July 11, 2003 SEIS Order. 1. Increase the Help Desk resolution from 2-day to 4-day; 2. Increase the Rapid Response ticket assignments from 24 hours to 48 hours; 3. Excuse ITD from conducting basic laptop computer training; 4. Alternatively excuse school site visits by ITD personnel or reduce the school visits by the ITD personnel to two school visits per month. BCPSS will continue to implement the remaining recommendations from the Special Master's Report as necessary. These modifications reflect the ITD leadership's view of the capacity of the remaining personnel to perform the SEIS Order requirements and other obligations. *See*, Exhibit 1 of BCPSS Motion. BCPSS does not propose terminating all activities or the entire order. It has tailored the modifications reflecting reasonable increases in time necessary to perform the activities under the Order with the personnel remaining in the department.

### 3. Modification of the July 11, 2003 Order does not create a constitutional violation or denial of procedural or substantive requirements under the IDEA.

BCPSS unquestionably remains responsible for ensuring that the procedural and substantive rights of the IDEA and Maryland law are provided to students with disabilities. State Defendant through its monitoring and oversight responsibilities is obliged to ensure that BCPSS does not shirk its responsibilities to comply with the strictures of the IDEA and Maryland law. State Defendant has numerous structures in place to address allegations that BCPSS students are denied the procedural and substantive rights under the IDEA and Maryland law. An important

5

instrument is the State Defendant's complaint investigation branch of the Division of Special Education/Early Intervention Services. The branch investigates allegations of denial of violations through a vigorous investigation process that has been an effective instrument for correcting substantiated violations of IDEA for individual students and school systems. Through the complaint investigation process State Defendant has authority to order that a remedy is provided for a violation. Any procedural or substantive violations found, either for an individual student violation or a systemic violation, are documented in a written Letter of Finding that includes an analysis of the facts and law and corrective action including an order to determine a remedy.[3] State Defendant follows up Letters of Finding to ensure that any corrective action ordered is implemented and remedy determined.

A newly developed instrument is the State Defendant's enhanced monitoring and oversight of BCPSS's provision of special education and related services. State Defendant recently outlined this Enhanced Monitoring for Continuous Improvement and Results (MCIR) process to the Court at the November status hearing. The Special Master and parties have received additional information about the Enhanced MCIR at multiparty meetings and through discussions.[4] State Defendant's Enhanced MCIR relies on data verification, on-sight monitoring and auditing, and student record review by personnel of State Defendant's Division of Special

---

[3]State Defendant publishes the Letters of Finding of investigations of allegations of violations of the IDEA and Maryland law on its website. Letters of Findings from July 2000 through June 2003 are available at www.msde.state.md.us/SpecialEducation.

[4]Maryland developed and implemented the Monitoring for Continuous Results and Improvement (MCIR) in all local school systems except BCPSS in response to the IDEA Reauthorization in 1997. The MCIR procedures were not previously implemented in BCPSS to avoid interfering with the Court's activities in the present matter.

Education/Early Intervention Services. It also includes coordination with other Divisions of State Defendant who have monitoring activities in BCPSS, such as the Division of Planning, Results and Information Management (PRIM).[5] The enhanced process will permit State Defendant to determine whether modification of the July 11, 2003 SEIS order actually impairs BCPSS's ability to comply with the procedural and substantive requirements of the IDEA.[6]

BCPSS's motion does not request relief from any specific requirements of the IDEA, Maryland law, or create a constitutional violation. While State Defendant supports BCPSS's Motion, attention must be given to ensure that the SEIS processes in place are not eroded to the point that students with disabilities' are denied procedural and substantive rights under the IDEA and Maryland law. State Defendant believes that through its own monitoring and oversight structures, it will ensure that BCPSS complies with the IDEA and Maryland law.

## C.   Conclusion

BCPSS has undergone a significant and unexpected change in circumstances attendant with the termination of 700 BCPSS employees including 40% reduction of the ITD staff. The extent of BCPSS's financial crisis was unanticipated at the time the July 11, 2003 SEIS Order was rendered. Under the changed circumstances, the personnel reduction will make strict compliance with the July 11, 2003 SEIS Order substantially more onerous. The public interest is

---

[5] PRIM is planning an audit of BCPSS's accountability and exit data databases designed to identify and correct discrepancies identified by the Special Master in data reported to State Defendant.

[6] State Defendant developed the Enhanced MCIR to specifically monitor and oversee the BCPSS provision of special education and related services when this consent decree is ended. To demonstrate State Defendant's capacity to conduct reliable and effective monitoring of BCPSS while the consent decree is still in place, aspects of the Enhanced MCIR will begin once necessary personnel are in place.

served by allowing BCPSS administrators to take responsible action to correct its financial crisis. The proposed modification is suitably tailored to the changed circumstances and the proposed modification will not perpetuate or create a constitutional violation or denial of procedural or substantive requirements under the IDEA. For these reasons State Defendant respectfully requests the court to modify the July 11, 2003 SEIS Order consistent with BCPSS's Motion.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
ATTORNEY GENERAL

Elliott L. Schoen
Assistant Attorney General
Office of the Attorney General
Maryland State Department of Education
200 St. Paul Place, 19th Floor
Baltimore, Maryland 21202
Tel: (410) 576-6465

Counsel for Defendant
Nancy S. Grasmick
State Superintendent of Schools

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___5___ day of December, 2003, a copy of the foregoing State Defendants' Memorandum in Support of City Defendant's Motion to Modify the Order of July 11, 2003 Regarding Implementation of the Special Education Information System were mailed, postage prepaid, to:

Donna Wulkan, Esquire
1424 16th Street
Washington, D.C. 20036

Janice Johnson Hunter, Esquire
Maryland Disability Law Center
1800 N. Charles Street
Baltimore, MD 21201

Anthony J. Trotta, Esquire
Baltimore City Public Schools
200 East North Avenue
Baltimore, MD 21202

Carol Ann Baglin
Maryland State Department of Education
200 West Baltimore Street
Baltimore, MD 21201

Gayle Amos
Jodi French
Baltimore City Public Schools
200 East North Avenue
Baltimore, MD 21202

Abbey G. Hairston
Seyfarth Shaw
111 South Calvert Street, Suite 2700
Baltimore, MD 21202

_____
Elliott L. Schoen